IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| BRYNA K.,[1]<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER, SOCIAL<br>SECURITY ADMINISTRATION,<br><br>    Defendant. | Case No. 6:24-cv-01471-HL<br><br>**OPINION AND ORDER** |

HALLMAN, United States Magistrate Judge:

    Plaintiff Bryna K. brings this action under the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. 42 U.S.C. § 401 *et seq.* For the following reasons, the decision of the Commissioner is AFFIRMED.

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name for non-governmental parties and their immediate family members.

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

## BACKGROUND

**I.     Plaintiff's Application**

Plaintiff alleges disability based on severe anxiety and a lower back injury. Tr. 64.[2] At the time of her alleged onset date, she was 34 years old. Tr. 64. She has completed high school and cannot perform her past relevant work. Tr. 28-29.

Plaintiff protectively applied for DIB and SSI on December 10, 2020, alleging an onset date of October 2, 2019. Tr. 64. Her application was denied initially on July 22, 2021, and on reconsideration on July 25, 2022. Tr. 71, 83-84. Plaintiff subsequently requested a hearing, which was held on October 19, 2023, before Administrative Law Judge ("ALJ") B. Hobbs. Tr. 36. Plaintiff appeared and testified at the hearing, represented by counsel. Tr. 36-62. A vocational expert ("VE"), Erin Hunt, also testified. Tr. 54-61. On November 3, 2023, the ALJ issued a decision denying plaintiff's claim. Tr. 17-30. Plaintiff requested the Appeals Council review ALJ Hobbs' decision, which was denied on July 8, 2024. Tr. 1-6. Plaintiff then sought review before this Court.

**II.    Sequential Disability Process**

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.  At

---

[2] Citations to "Tr." are to the Administrative Record. (ECF 12).

step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

### III.     The ALJ's Decision

At step one, the ALJ determined that plaintiff meets the insured status requirements of the Act through December 31, 2024, and that plaintiff has not engaged in substantial gainful activity since October 2, 2019, the alleged onset date. Tr. 19.

At step two, the ALJ determined that plaintiff has the following severe impairments: "depression; degenerative disc disease; posttraumatic stress disorder ("PTSD"); insomnia disorder; panic disorder, and generalized anxiety disorder." Tr. 19.

At step three, the ALJ determined that plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 20-21. The ALJ then resolved that plaintiff had the RFC to perform light work with the following limitations:

> [She] can occasionally climb ladders, ropes, and scaffolds, frequently stoop kneel, crouch, and crawl. [She] can understand, remember, and carryout simple and routine instructions. [She] can occasionally interact with a supervisor and coworkers. [She] can never interact with the public. [She] cannot perform teamwork.

Tr. 22.

At step four, the ALJ found that plaintiff could not perform her past relevant. Tr. 28. At step five—considering plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that plaintiff could perform, including work as a routing clerk, marker, and housekeeping cleaner. Tr. 29. Thus, the ALJ concluded that plaintiff is not disabled. Tr. 29.

### DISCUSSION

Plaintiff argues that the ALJ committed three errors: (1) failing to identify specific, clear and convincing reasons for rejecting plaintiff's subjective symptom testimony; (2) improperly

rejecting the medical opinion of Sarah Eckstein, Ph.D.; and (3) improperly rejecting the lay witness testimony of plaintiff's mother. Pl.'s Br. 2, ECF 11.

I.      **Subjective Symptom Testimony**

Plaintiff contends that the ALJ failed to provide specific, clear and convincing reasons to reject his symptom testimony. Pl.'s Br. 9-15. This Court finds that the ALJ's rejection of plaintiff's testimony concerning her medical conditions was supported by substantial evidence.

A.      **Legal Standards**

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms.

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit

claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

### B. Plaintiff's Testimony

Plaintiff reported that she could not work on a regular, full-time basis because of anxiety, depression, and a chronic back injury that occurred in 2015. Tr. 44, 47. She testified that, on a scale from one to ten, her back pain consistently sits at a three, but can reach ten on any given day, and is exacerbated by physical activity, such as sitting in cars, sitting in general, walking, standing, lying down, stooping, lifting bales of hay to feed her horses, and shoveling manure. Tr. 47-48. She explained that she will use a wheelbarrow to help move hay and that she will take breaks when shoveling. Tr. 48-49. She was also, at one time, prescribed a walker while she was also in physical therapy, but that she does not use it as much as she needs because her parents' dogs get in the way, so she uses the walls and counters to get around her home. Tr. 50. As for physical therapy, plaintiff testified that she stopped going because she could no longer afford gas, but that when she did go, it was in person. Tr. 47, 52. When asked about her daily activities, she stated that she does not leave her room except to care for her horses or make a meal, that she does not have friends, and that she has no social interaction outside of the rare occasion she will speak to her brother. Tr. 50-51. She also stated that while she does go grocery shopping, she does not like to and would rather have everything delivered but cannot afford to do so. Tr. 52. When it came to her personal hygiene, plaintiff testified that while she showers, she sometimes forgets to brush her teeth in the morning. Tr. 52.

The ALJ determined that her medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity,

persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 22. The ALJ reasoned that plaintiff's testimony concerning her mental health impairments was inconsistent with her activities of daily living, her treatment, and other objective medical evidence. Tr. 23-24, 25-28.[3] Plaintiff argues that the ALJ's reasoning was not specific, clear, and convincing, that the ALJ relied only on objective evidence when mental health conditions require more consideration of subjective reporting, that the ALJ mischaracterized her mental health treatment as sporadic, and that her ability to care for her horses does not demonstrate that she is more capable than alleged. Pl.'s Br. 12-15. This Court affirms the ALJ's rejection of plaintiff's symptom testimony as inconsistent with her activities of daily living and the overall medical record.

C.   **Daily Activities**

Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639.

Plaintiff stated that she was unable to work because her depression, anxiety, and PTSD caused her to have trouble with her memory, her irritability, her concentration, her ability to complete tasks and get along with others, and her ability to follow instructions. Tr. 44, 226. She also stated that she isolates, avoids people and the general public, and that she needs reminders for appointments, phone calls, paying bills, and providing medication to her animals. Tr. 223. In

---

[3] Plaintiff only raises arguments regarding her mental health impairments. Accordingly, this Court only addresses Plaintiff's mental health conditions.

discounting plaintiff's testimony regarding her memory, concentration, and ability to complete tasks because of her daily activities, the ALJ cited plaintiff's ability to independently care for three horses. Tr. 26.

Plaintiff testified that she does not like to grocery shop and would prefer having everything delivered but that she can and does go when she has to, that she remembers to take care of her horses by feeding them hay, watering them, providing medical assistance and intervention, walking them, and shoveling out their stalls, and that she does these activities twice a day, every day, for multiple hours at a time. Tr. 48-49, 222-23. She is also capable of performing all household chores, such as washing dishes, doing laundry, making food, and taking care of other pets, as well as her own hygiene. Tr. 222-23. Although Plaintiff's ability to perform basic daily tasks does not demonstrate transferable work skills or contradict her testimony, *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007), the ALJ was entitled to rely on her extensive and ongoing ability to care for her horses as a specific, clear and convincing reason for determining that she was more capable that she had testified. There was substantial evidence in the record that Plaintiff's ability to care for her horses contradicted her testimony regarding her memory, concertation, and ability to complete tasks. Accordingly, the ALJ did not err.

### D.    Inconsistent Medical Record

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *see also Smartt*, 53 F4th at 498 ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."). While an ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain,"

*Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). In sum, "an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborat[ing]' every allegation within the subjective testimony." *Smartt*, 53 F.4th at 498 (quoting *Burch*, 400 F.3rd at 681)).

The ALJ concluded that plaintiff's testimony regarding the severity of her mental health impairments was inconsistent with her medical records showing inconsistent treatment and generally normal findings, and with her consultative examinations. Tr. 23-28. As support for this conclusion, the ALJ pointed to records showing that she received minimal treatment in 2019, two notes of treatment in January 2020, and then no other treatment until August 2021. Tr. 356, 322, 736, 756, 759. Plaintiff attended therapy for eight sessions between August 2021 and the beginning of January 2022 before being involuntarily discharged due to non-engagement. Tr. 356, 361, 367, 372, 382, 393, 717. In February 2022, plaintiff once again entered into therapy, attending appointments until May, at which point she was discharged for non-engagement. Tr. 413, 436-40, 444, 450, 468, 470, 586. She entered therapy again in November 2022 and testified that she has continued engaging in therapy at least through the date of her hearing, October 19, 2023. Tr. 46, 726. Throughout her treatment, while her GAD-7 and PHQ-9 scores were high, her mental status examinations were mostly normal. Tr. 358, 388, 398. Her mental status examinations showed that while she could be guarded, anxious, and depressed, she was also

cooperative, had fair judgment and insight, coherent thoughts and thought processes, appropriate appearance, fair response to treatment, concrete thinking, intact insight, and appropriate mood and affect. Tr. 360, 362, 373, 376, 382, 393, 401, 749, 756, 775, 782, 788, 794, 798, 806, 812, 824, 839, 848. At her consultative examinations, while she may have appeared depressed, her short- and long-term memory were intact, her attention and concentration were average to mild, she had no deficits in her persistence and pace, she completed both simple and simple multi-step tasks with no errors, and she had above average immediate and delayed memory abilities. Tr. 333-34, 572-74, 583-84.

    Plaintiff argues that her treatment was not sporadic, and that the ALJ did not take her subjective experiences into account. However, it is unclear how plaintiff would otherwise define sporadic. Plaintiff stopped and started treatment several times, with significant gaps between each stop and start, and never attended for any significant amount of time except for her most recent treatment. Her treatment was, indeed, sporadic. As for the ALJ not taking plaintiff's subjective experiences into account, the ALJ noted that she could be guarded, depressed, and tearful, that she reported having explosions of rage, and that she isolated. *See* Tr. 569, 582, 726. The ALJ also noted that she was responding well to therapy, that her mental status examinations were mostly normal, that her attention and concentration and her ability to complete tasks regularly and without reminders was intact, and that she was able to be around others when necessary. *See* Tr. 49, 333-34, 382, 393, 401, 572-74, 583-84, 749, 756, 775, 782, 824, 848. While an ALJ is required to take subjective experiences into account, the ALJ is "not required to believe every allegation of disabling pain or other non-exertional impairment." *Orn v. Astrue*, 495, F.3d 625, 635 (9th Cir. 2007) (internal quotations omitted); *see also Laborin v. Berryhill*,

867 F.3d 1151, 1153 (9th Cir. 2017) ("[T]he ALJ must take the claimant's subjective experiences . . . into account when determining the RFC.") (internal quotations omitted).

Given the evidence above, the ALJ did not err in discounting the plaintiff's subjective symptom testimony based on inconsistencies with the medical record.

## II.   Medical Opinions

Plaintiff next argues that the ALJ's rejection of the medical opinion provided by Dr. Eckstein, was not supported by substantial evidence. Pl.'s Br. 2-9. This Court finds that the ALJ's assessments of the medical opinions was supported by substantial evidence.

### A.   Legal standards

For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan 18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence

to support their opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)- (3). The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(c)(b). The court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

### B.    Dr. Sarah Eckstein

Dr. Eckstein conducted a psychodiagnostic consultative examination on November 1, 2022. Tr. 579. During testing, Dr. Eckstein observed that plaintiff was appropriately dressed and groomed, that she was oriented in all four spheres, that her long- and short-term memory were intact and average, that her attention and concentration were within normal limits to slightly below average, that her fund of general knowledge was average, that her intellectual functioning was average, that her reasoning abilities were "well-preserved and functionally adequate for ordinary work-related purposes," that she had adequate common-sense, her interpersonal skills

were intact, and her speech and train of thought were good. Tr. 583-84. Dr. Eckstein also noted that plaintiff was anxious, depressed, and tired. Tr. 583. Following her exam, Dr. Eckstein opined that plaintiff would have marked difficulty performing detailed and complex tasks, interacting with co-workers and the public, performing work activities on a consistent basis without special or additional instructions/accommodations, maintaining regular attendance in the workplace, completing a normal workday or workweek without interruptions from her psychiatric condition, and with usual stress encountered in the workplace. Tr. 584. Dr. Eckstein also noted that plaintiff would have moderate difficulty performing simple and repetitive tasks and accepting instructions from supervisors. Tr. 584.

The ALJ found the assessed limitations unpersuasive because they lacked any support from Dr. Eckstein's findings during examination, were inconsistent with the overall record, had no support from the other two psychological consultative examinations. Tr. 28. He also found that plaintiff demonstrated a higher level of functioning than what was reported because she was caring for three horses, getting agency assistance with keeping her horses fed, and contacting police to report abuse from her mother. Tr. 28.

Plaintiff argues that the ALJ improperly rejected Dr. Eckstein's opinion due to over reliance on objective evidence to the detriment of subjective evidence, that the ALJ mischaracterized the opinions of the other psychological examiners not offering support because they did not offer functional limitations, and that plaintiff's ability to care for three horses, get agency assistance, and contact the police does not indicate a capacity to sustain competitive work. Pl.'s Br. 7-9. This Court finds the ALJ's rejection of Dr. Eckstein's opinion was supported by substantial evidence.

Plaintiff's first argument – that the ALJ overly relied on objective evidence to improperly reject the subjective evidence of a psychiatric evaluation – is unfounded. Plaintiff cites *Buck v. Berryhill* for the premise that because psychiatric evaluations inherently rely on self-reports, they cannot be rejected simply because they are at least partially based on self-reports. 869 F.3d 1040, 1049 (9th Cir. 2017); Pl.'s Br. 7. Plaintiff concludes by stating the ALJ was "not entitled to selectively rely on certain 'objective' evidence to dismiss the informed conclusions." Pl.'s Br. 7. However, the ALJ did not "selectively rely on certain 'objective' evidence," the implication being that the evidence was somehow cherry-picked. *Id*. In fact, other than an observation that plaintiff appeared anxious, depressed, and tired, Dr. Eckstein provided no support for her assessed limitations. Considering that "[d]iagnoses will always depend *in part* on the patient's self-reports, *as well as* on the clinician's observations of the patient," it is entirely reasonable for the ALJ to reject the medical opinion due to such an internal inconsistency. *Buck*, 869 F.3d at 1049 (emphasis added). As such, the ALJ's rejection of Dr. Eckstein's opinion as unsupported by her own clinical observations, was supported by substantial evidence.

As for the two other psychological evaluations, plaintiff is correct in that they did not offer any specific functional limitations, which the ALJ acknowledged. Tr. 26. However, they did provide insight into the plaintiff's condition that do not support Dr. Eckstein's evaluation. For example, Dr. Smyth noted that he was unsure if plaintiff met the criteria for PTSD and that it was unclear if her current reported symptoms interfered with her daily function at all. Tr. 574. As for Dr. Cole, he observed only mild problems in attention and concentration, had above average immediate and delayed memory, and was able to sustain simple tasks with no problems completing simple multi-step tasks. Tr. 333-34. While he acknowledged that plaintiff's anxiety and fatigue would be her primary barriers, he gave no indication that they would actually prevent

her from working altogether. Tr. 334. Based on the pertinent parts of the two examiners' observations, the ALJ drew a reasonable conclusion when noting that similar limitations were not even suggested, much less recommended. *See Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir. 1982) ("[T]he [ALJ] is entitled to draw inferences logically flowing from the evidence.").

Plaintiff's final argument – that her ability to take care of three horses, contact an agency for assistance with keeping her horses fed, and being able to contact the police to report abuse do not reflect an ability to maintain competitive employment – is also unsupported. The ALJ did not allege that these three actions alone were enough to discount Dr. Eckstein's entire medical opinion, but were given as examples to illustrate higher functioning in the areas of adapting to her environment and remembering and executing tasks. Tr. 28. Plaintiff also sought assistance from agencies for feeding her horses after her parents would not assist with the expense, which the ALJ found demonstrated an ability to adapt. Tr. 21.[4] Plaintiff's extensive and ongoing ability to care for her horses demonstrates that she can remember and execute tasks without outside help since she does them on her own and without reminders. Tr. 49. In sum, the ALJ did not err in rejecting Dr. Eckstein's medical opinion as unsupported.

### III. Lay Witness Testimony

Plaintiff contends that the ALJ erred by failing to properly address the lay witness testimony provided by plaintiff's mother by failing to provide reasons germane to the witness. Pl.'s Br. 15-17.

Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina v. Astrue*, 674

---

[4] It is unclear how reporting abuse to the police demonstrate a concrete showing of an ability to adapt. A claimant should not be penalized for reporting abuse. However, the ALJ's rejection of the medical opinion was not dependent on this isolated instance.

F.3d 1104, 1114 (9th Cir. 2012) (citation and internal quotation omitted). The ALJ must provide "reasons germane to each witness" to reject such testimony. *Id*. (citation and internal quotation omitted). "Lay witness testimony is competent evidence and cannot be disregarded without comment." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). However, failure to discuss or weigh third-party testimony is harmless where the ALJ validly discounts similar evidence. *See id*. at 1118-19 (ALJ's failure to comment upon lay witness testimony is harmless where "the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited").

      Plaintiff's mother provided a third-party report with an inaccurate date. Tr. 240-47. In it, she stated that plaintiff's depression and anxiety affected her ability and desire to work, that she keeps to herself, that she does chores in and around the house as well as takes care of pets, that she does not need reminders for medicine or to take care of her personal hygiene, that she goes outside daily for chores and "occasionally for fun," that she meets friends while they shop, that she has a short temper, that her memory, concentration, understanding, ability to get along with others, complete tasks, and follow instructions have all been affected. Tr. 241-243. Plaintiff's mother also stated that her ability to follow instructions is based on her anxiety levels, that she has no problems getting along with authority figures, and that she has never been fired because of problems getting along with others. Tr. 243.

      The ALJ also found that the witness's testimony regarding Plaintiff's activities was generally consistent with a range of light work and simple, routine tasks with limited social interaction. *Id*. The ALJ also found the lay witness testimony consistent with plaintiff's claims of depression and anxiety but inconsistent with the severity alleged. Tr. 28. As discussed above, the severity of plaintiff's limitations is unsupported, and while the plaintiff has pointed to

evidence that would support the degree alleged, "where the evidence is susceptible to more than one rational interpretation," the Court will uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Thus, the ALJ provided a germane reason to reject the witness' testimony concerning the severity of Plaintiff's mental health limitations.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 19th day of August 2025.

_____
ANDREW HALLMAN
United States Magistrate Judge